HURD *v.* NORTHERN ACCIDENT CO.

1. TRIAL—DIRECTING VERDICT—QUESTIONS OF LAW AND FACT.
   In an action on an accident insurance policy, it was not error to submit to the jury the question of the cause of the death of the insured who was shown by plaintiff's testimony to have been injured in the face by a canthook and to have died from an abscess resulting therefrom, although the testimony was contradicted by defendant's witnesses; the weight and credibility of testimony being questions of fact.

2. SAME—EVIDENCE—INCOMPETENCY.
   A statement by plaintiff that deceased was sick about ten days after an injury, which was shown by other testimony, was not objectionable on the ground that the plaintiff did not know when the accident occurred.

3. SAME—CURING ERROR.
   Striking out testimony on the withdrawal of the question cures any error committed in receiving the testimony.

4. SAME—CONDUCT OF COUNSEL.
   Attorneys are ordinarily entitled to state the purpose of testimony offered.

5. SAME—ARGUMENT.
   While an attorney is not justified in strengthening testimony by a statement in the argument of his own belief of the facts, such conduct is not reversible error where the reason was not relied on in the trial court and no exception taken to the ruling of the court.

Error to St. Clair; Tappan, J. Submitted March 1, 1910. (Docket No. 72.) Decided March 19, 1910.

Assumpsit by Martha J. Hurd against the Northern Accident Company on a policy of insurance. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Henry C. Walters*, for appellant.

*William T. Hosner* (*B. R. Erskine*, of counsel), for appellee.

HOOKER, J. The plaintiff, a widow, sued to recover the sum of $500, alleged to be due upon an accident policy upon the life of her husband, payable to her. Defendant has appealed from a judgment in favor of plaintiff. The only controverted question upon the trial was whether the husband's death was due to an accident.

*Refusal to Direct a Verdict.* Defendant assigns error upon the refusal of the trial judge to direct a verdict in its favor (assignments Nos. 1, 16, and 17). The plaintiff offered testimony of one claiming to have been an eyewitness to a blow upon the face, received by the deceased from a canthook which he was using. Several witnesses gave testimony tending to show the presence of marks upon his face. Defendant's counsel insists that this testimony is false, and has not hesitated to charge the plaintiff with perjury. No rule is better settled than that requiring such a question to be left to the jury. We infer that counsel also contends that such a blow as shown in this cause could not have caused an "abscess of the brain," resulting in death within 10 days, and that for this reason the verdict should have been directed in defendant's favor. Upon this question the testimony of witnesses varied, and the judge did not err in submitting it to the jury.

*Rulings upon Testimony.* Error is assigned upon several rulings, which we will briefly state:

(1) Second assignment: Mrs. Hurd, the plaintiff, stated:

"My husband was taken sick, feeling badly on Saturday, and complained Thursday night. That would be somewhere around the 27th of August, I think; he was sick about 10 days from the time he received the injury."

Counsel moved to strike out the words "from the time he received the injury," and the motion was denied, and an exception was taken.

(2) Third assignment: George Wilson, plaintiff's son-in-law, had testified to the circumstances of the accident, claiming to have been an eyewitness. Upon cross-exam-

ination it was drawn out that he did not mention the accident to the plaintiff.    On redirect he said:

"I didn't say anything to Mrs. Hurd before his death.

"*Q.* And why?

"*Mr. Walters:* I object to that as immaterial and incompetent.

"*The Court:* He may answer.    Note an exception.

"*A.* Well, my mother-in-law's health was not very good, that is she had been not feeling very good up north, where they had lived, and he was a man that thought an awful lot of his family, and anything that he could keep to himself he generally done so, and on the way home he said—

"*Mr. Walters:* Just a moment.  It seems to me perfectly apparent that this is incompetent, immaterial, and irrelevant, and not a part of the *res gestæ.*

"*The Court:* You raised the question as to his not saying anything to the wife about it, and this is a continuance of the inquiry, I understand.

"*Mr. Hosner:* If it is objected to, we will withdraw the question.

"*Mr. Walters:* I wish an exception to the extent to which it has gone.

"*The Court:* The jury will not pay any attention to it; it having been withdrawn, they will disregard it."

(3) Assignments 4 and 5: Counsel for plaintiff offered in evidence a letter written by defendant's secretary. The following occurred:

"*Mr. Hosner:* The purpose of offering this letter and the blank attached to it is this—

"*Mr. Walters:* I object to a statement of the purpose.

"*Mr. Hosner:* I have a right to state why the offer is made.

"*The Court:* Proceed with your statement.    (Exception by defendant.)

"*Mr. Hosner:* It is to show that on January 12th the company sent to me this letter and this blank, and the blank was to be filled by Charles L. Hurd in his lifetime, as you will notice on the back of it, and the claim that he is to make there is to be made by him.   The witness now states that he was there shortly after September 3d, and knew this man was dead, and January 12, 1905, they were sending out a blank for him to fill out; not for his

widow to fill out, or for the physician to fill out, but for Charles L. Hurd to fill out. It seems to me that it is material to show that they were not acting in good faith, or trying to get at the facts and investigating the facts in the case.

"*Mr. Walters:* I wish an exception to the making of the statement in the presence of the jury."

(4) Assignment 6: Error is assigned on the refusal of the court to strike out the following answer given by the witness Horace S. Curtis, on cross-examination by plaintiff's counsel, viz.: "She did not give me that as a reason, no," which answer was given to the following question:

"*Q.* And didn't she state to you that she didn't want anything to say to you for the reason that you had not answered her communications or the doctor's communications, and that she thought that you weren't acting in good faith with her; didn't she make those statements?"

Of these assignments we may say: We suppose that counsel's claim under assignment 3 was intended to mean that, inasmuch as Mrs. Hurd did not witness the accident, she could not know when it happened, and that her statement that her husband died 10 days after the injury was in a way a statement that he was injured, and when the injury occurred. The testimony of George Wilson had shown the fact of the injury and the time it occurred. Doubtless she reckoned her 10 days from that time; it being also the time when she saw the mark on the face. We have no doubt that the jury so understood it. The assignment is without merit.

Assignment 3: Objection being made to the testimony covered by this assignment, the testimony was practically stricken out. There was no error from which defendant suffered.

Assignments 4 and 5: The letter was not admitted, and we have no means of ascertaining what it would have shown. Ordinarily it is competent for counsel to state the nature and purpose of testimony offered, and we find no error in this instance.

Assignment 6:    The answer of the witness being favorable to defendant, we see no reason for discussing the subject further.

Improper Argument. Assignments 7, 8, 9, 10, 11, 12, 13, 14, and 15:    This relates to strictures upon the testimony of a witness, and the direction to counsel to "go ahead" after the ruling was made on one of the objections relating to this subject.    The testimony of the witness was important, and it covered so much of the case, and was contradicted by so many persons, that the arguments made by counsel seem to us to have been proper.    We cannot say that it is error for counsel to ask a jury to disbelieve the statements of a witness, if they are contradicted, or to ask them to draw inferences that he acted at the suggestion of interested parties in doing unnatural things, in which he has no personal interest.    We disapprove of the statement:

"And, gentlemen, I believe, as much as I believe I am here, that Jesse Evans went to that home the day before this man died, at the request of somebody that was interested in the transaction."

It is not the privilege of counsel to attempt to strengthen the evidence, or impress a jury by statements of his own beliefs and opinions of the facts.    But this appears to have been unnoticed, as the following exceptions, which follow the last quotation, show:

"*Mr. Walters* (defendant's attorney): I take an exception to the statement of counsel that Jesse Evans went to that home at the request of somebody who was interested.

"*Mr. Hosner:* I say that is my opinion; that is the inference I draw from this testimony, and from his testimony that he went there to be a witness in this case.

"*Mr. Walters:* I take a further exception to the counsel's reiteration of the statement and especially to the statement that Mr. Evans went there to be a witness in this case.

"*The Court:* Go ahead."

No exception appears to have been taken to the direc-

tion " Go ahead," and error upon this is therefore not well assigned.

**Refusals of Requests to Charge.** The requests covered by assignments 17, 18, 19, 20, and 21 were sufficiently dealt with in the charge, being practically given. The motion for new trial was properly denied.

We find no error, and the judgment is affirmed.

MONTGOMERY, C. J., and OSTRANDER, BLAIR, and STONE, JJ., concurred.